**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARTLEY MULLEN, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-00509 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| WYNDHAM HOTELS AND RESORTS, INC., | |
| Defendant. | |

Plaintiff Bartley Mullen, on behalf of himself and the proposed class (defined below), brings this action against Wyndham Hotels and Resorts, Inc. ("Wyndham" or "Defendant") to challenge its corporate policies and practices that cause the description of accessible features on Wyndham brand hotel websites to be both materially inaccurate and materially incomplete thereby rendering it difficult if not impossible for individuals with mobility disabilities to assess whether a given Wyndham hotel can be safely used by them, in violation of federal law.

**INTRODUCTION**

**Statutory and Regulatory Background Relevant to Plaintiff's Claims**

1.     Title III of the Americans with Disabilities Act ("ADA") provides that "[i]t shall be discriminatory" and unlawful "to afford" individuals with disabilities an unequal opportunity "to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation." 42 U.S.C. 12182(b)(1)(A)(ii).

2.     Title III further defines discrimination to "include[]" failing to make "reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford" a covered entity's "goods, services, facilities, privileges, advantages, or accommodations

to individuals with disabilities," unless the modifications would "fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. 12182(b)(2)(A)(ii).

3.      Congress directed the Attorney General to issue regulations to implement Title III's statutory provisions.  42 U.S.C. 12186(b).

4.      In 2010, the Department of Justice ("DOJ") amended its existing ADA regulations by, in part, adopting the Reservation Rule, which addresses the application of the statutory reasonable-modification requirement to reservation services offered by hotels and other places of lodging.  28 C.F.R. 36.302(e).

5.      The DOJ confirmed that Title III requires hotels to make "reasonable modifications to reservation policies, practices, or procedures when necessary to ensure that individuals with disabilities are able to reserve accessible hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms."  28 C.F.R. Pt. 36, App. A at 804.

6.      The DOJ promulgated this specific regulation to reinforce Title III's requirements because it had received "many complaints" and commenters had highlighted "an ongoing problem with hotel reservations."  *Ibid.*

7.      For example, individuals with disabilities who had reserved accessible hotel rooms often "discover[ed] upon arrival that the room they reserved [was] . . . not accessible."  *Ibid*.

8.      Other individuals with disabilities found themselves unable to use hotels' online reservation services at all because of a lack of accessibility information.  *Id.*

9.      The Reservation Rule highlights the fact that Title III requires that a hotel must "[m]odify its policies, practices, or procedures to ensure that individuals with disabilities can make

2

reservations of accessible guest rooms. . . in the same manner as individuals who do not need accessible rooms." 28 C.F.R. 36.302(e)(1)(i).

10.     The Reservation Rule further confirms that Title III requires a hotel to "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets [their] accessibility needs." 28 C.F.R. 36.302(e)(1)(ii).

11.     The requirement described in ¶ 10 reflects the fact that individuals who use a wheelchair cannot book a room using an online reservation service – and are thus not afforded equal access to the service in violation of Title III – if they cannot determine whether the hotel or specific rooms are wheelchair accessible. 28 C.F.R. Pt. 36, App. A at 805.

**Plaintiff's Background and his Experiences with The Wyndham Ramada Hotel in Ligonier, Pennsylvania**

12.     Plaintiff is a bilateral, above-knee amputee who relies on a standard size wheelchair for mobility. The seat of his standard size wheelchair is approximately 18-inches from the ground.

13.     Plaintiff resides in Beaver County, Pennsylvania.

14.     Plaintiff is and has been a frequent traveler both professionally and personally and has regularly stayed in hotels throughout his adult life.

15.     During a trip to Washington D.C. to attend a disability rights conference, Plaintiff stayed in a hotel and was injured while attempting to transfer from his wheelchair to a hotel bed that was too high to permit a safe transfer.

16.     It is Plaintiff's experience that the issue of inaccessible beds in hotels is sufficiently common that he has often had difficulty finding a hotel with a bed that is usable by him in the locations of his travel.

3

17.     Since being injured during this Washington D.C. hotel stay, Plaintiff has continued to use hotels in the locations that he visits, but he now calls those hotels in advance to identify hotels that have beds that are low enough to permit him to safely and independently transfer from his wheelchair onto the bed.

18.     Plaintiff also reviews the websites of the hotels that he wants to patronize to assess the accessible features offered by the hotel that are relevant to his mobility disability. Plaintiff is particularly interested in information related to accessible parking, accessible paths of travel, accessible bathrooms, and, as described above, accessible beds.

19.     It is Plaintiff's experience that while some hotels have information on their websites related to the accessibility of the beds in their "accessible" rooms, most do not.  That is why he calls hotels to attempt to get this information in advance of booking a trip to a given hotel.

20.     A Wyndham-branded hotel is operated by Ashirwad Hospitality, LLC at 216 Loyalhanna Street, Ligonier, PA 15658 ("the Hotel").

21.     A website owned and/or operated by Wyndham is hosted at the following URL: www.wyndhamhotels.com/ramada/ligonier-pennsylvania/ramada-ligonier-pa/overview    (the "Website").  The Website describes the Hotel.  Plaintiff reviewed the Website, including its description of the Hotel's accessible features, when assessing whether the Hotel would be usable by him during his upcoming visits to the Laurel Highlands.

22.     The hotel is approximately a 1 hour and 45-minute drive from Plaintiff's home.

23.     The Hotel has pricing that is appealing to Plaintiff and a location that is ideally situated for Plaintiff's upcoming travel plans.

24.     Because of his desire to patronize the Hotel during his upcoming visits to the Laurel Highlands, Plaintiff called the published telephone number for the Hotel and inquired about the

4

height of the top surfaces of the beds in the Hotel's purportedly accessible rooms. He was told that the height of these beds was 30 inches above the floor.

25.    As noted, the seat height for Plaintiff's standard size wheelchair is approximately 18 inches from the ground.

26.    The high sleeping surface (30-inches) of the bed in the Hotel's purportedly accessible room would render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed or from the bed to his wheelchair.

27.    Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, and lower passenger vehicle seats.

28.    Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength or be helped by a third party.

29.    Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms at the Hotel. As noted above, he has been injured in the past as a result of these same inaccessible conditions.

30.    Plaintiff personally visited the Hotel during the late winter/early spring of 2024 and, during that visit, noted that in addition to the Hotel's inaccessible beds, the Hotel's parking facilities have significant ADA violations that directly impact wheelchair users.

31.    Upon a follow-up review of the Website after this visit to the Hotel, Plaintiff confirmed that Defendant misrepresented these parking features as being accessible on its Website, when they were in fact not accessible.

**Plaintiff's Travel Plans**

32.     Plaintiff suffers from a disease that causes extensive damage to small and medium blood vessels and has resulted in the amputation of his legs in 2009, the placement of multiple heart stents between 2011 and 2014, and more recently the loss of his right thumb and portions of his right middle and ring fingers. Deteriorations in his health have adversely affected Plaintiff's mobility and have impacted his ability to travel.  Plaintiff's health issues limited his ability to travel during much of 2023.

33.     Because his mobility and ability to travel will be significantly compromised as his disease progresses, Plaintiff will be travelling frequently within western Pennsylvania to visit sites and locations that are appealing to him while he still can do so.

34.     Plaintiff has driven through the Laurel Highlands region multiple times in the past, and he finds the area to be very appealing.

35.     During all of his previous visits to the Laurel Highlands region, Plaintiff has driven to or through the area in his accessible van from his home in Beaver.

36.     As part of his general itinerary to travel while he still can, Plaintiff will travel to the Laurel Highlands during the mid to late summer of 2024 to visit the town of Ligonier, Fort Ligonier, and Fallingwater.  He will travel in his accessible van and stay overnight at a hotel for two days during this visit, and he would prefer to patronize an economical hotel near the town of Ligonier.

37.     Plaintiff will also travel to the Laurel Highlands during the fall foliage season of 2024. He will travel in his accessible van and stay overnight at a hotel during this visit, and he would like this hotel to be economical and close to the town of Ligonier.

38.     It is difficult for Plaintiff to plan a specific itinerary for an overnight trip substantially in advance given his fluid health issues.  That is, while it is reasonable for Plaintiff to plan a trip that is to occur on unspecified days during a multi-week period of the summer/fall of 2024, it is difficult to pick specific dates until Plaintiff can assess his health status closer in time to the actual travel dates.  Thus, Plaintiff will select his actual travel dates closer in time to the two trips described above.

39.     For that reason, Plaintiff desires to identify multiple accessible hotel options well in advance of his planned travel.

40.     Plaintiff was previously employed by the Disability Options Network ("DON") Center for Independent Living as a housing advocate.  DON is located in New Castle, Lawrence County, Pennsylvania.  DON's website describes the advocacy that the organization performs as follows:

> [T]he ultimate goal of advocacy is to enable the individual with a disability to become a full participant within his or her own community.
>
> There are times when even the best self-advocates need help and we're here to assist!!  With the help of our consumer advocates, we advocate on a state and national level for the rights of persons with disabilities.  If you need Advocacy or would like to help us advocate for disability rights, please feel free to contact us!!  DON would be happy to assist you and to have your assistance in this very important part of what we do.[1]

41.     To reiterate, Plaintiff was previously employed as an advocate by DON, and he has significant experience advocating for disability rights on a local and national level.

42.     Plaintiff desires to patronize the Hotel because it is inexpensive and ideally located for his visits to the Laurel Highlands during the mid to late summer of 2024 and during the fall foliage season in 2024.  Though Plaintiff would prefer to stay at this Hotel specifically, he is not

---

[1] https://www.doninc.org/don/services/advocacy/, last visited April 3, 2024

willing to subject himself to injury by staying at a hotel that has inaccessible beds that he cannot safely use.

43.     It is Plaintiff's belief that the ADA requires that the Hotel must offer beds that are accessible to guests like him, who are dependent upon a standard size wheelchair for mobility.

44.     The United States Department of Justice shares this view.[2]

45.     It is also Plaintiff's belief that the ADA requires that hotel websites must provide accessibility information and that the information must be materially accurate.

46.     The accessibility information provided on a hotel website certainly cannot be false.

47.     Plaintiff understands the role of a tester in civil rights litigation. While Plaintiff will visit the Ligonier area as a tourist and hotel patron during the spring/fall of 2024 as delineated above in as much detail as is reasonably possible – given Plaintiff's fluid health status – Plaintiff is also extremely motivated to be a tester in this case.

48.     To that end, as noted above, Plaintiff physically visited the Hotel during that late winter/early spring of 2024 and identified additional ADA violations at the property as follows: Three parking spaces are purportedly accessible – they have the international symbol of accessibility painted on the parking surface. However, none of these spaces have the required signage marking the spaces as accessible or van accessible. Two of these spaces also lacked access aisles - access aisles are the areas adjacent to accessible parking spaces that generally are marked

---

[2] *See* Statement of Interest ("SOI") of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-10195 (ECF 57), attached hereto as Exhibit A. The attached Statement of Interest contains a thorough discussion of a public accommodation's obligations under the general accessibility mandate, with a specific emphasis on the goods and services at issue in this case. *See also Mullen v. Concord Hosp. Enterprises Co., LLC*, No. 2:20-CV-01530-RJC, 2022 WL 295880 (W.D. Pa. Feb. 1, 2022); *Migyanko v. Aimbridge Hosp., LLC*, No. 2:20-CV-1095-NR, 2022 WL 345058 (W.D. Pa. Feb. 4, 2022); *Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. CV 21-1058, 2022 WL 1032732 (W.D. Pa. Apr. 6, 2022); and *Eyler v. Liza Luv Invs. III LLC*, No. 2:21-CV-01050-CRE, 2022 WL 2829823 (W.D. Pa. July 20, 2022).

with diagonal stripes, preventing other vehicles from parking immediately adjacent to the accessible spaces. The lack of access aisles is particularly problematic for a van user like Plaintiff; where such aisles are not present, vehicles may park adjacent to the accessible parking space, leaving insufficient room for him to exit or reenter his vehicle.

49.    The ADA violations listed above also illustrate that the Hotel's accessibility status is misrepresented on Defendant's website.

50.    Specifically, the ADA requires that "with respect to reservations made by any means," a place of lodging must "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservation service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets [their] accessibility needs." 28 C.F.R. 36.302(e)(1)(ii).

51.    The website for the Hotel indicates that it has "accessible van self-park" and "accessible van parking." From Plaintiff's activities as a tester in this matter, he knows that these representations on Defendant's Website are false.

52.    Plaintiff does not believe that the Hotel has ever had van accessible parking with access aisles.

53.    Plaintiff also does not believe that Defendant audits or otherwise confirms the accuracy of accessibility information on this Website or any of its websites.

54.    As a result, Defendant's websites have inaccurate and false information regarding ostensibly accessible features at many Wyndham-branded hotel properties.

55.    In addition, though hotels are required to have accessible beds, Defendant provides no information regarding the accessibility of the beds at Wyndham branded hotels on any of its websites.

56.     As noted, Plaintiff has already visited the Hotel, reviewed Defendant's Website and phoned the Hotel regarding accessibility features at the Hotel. He will make return visits to the Hotel during his travel to the Laurel Highlands this summer and fall.  He will continue to monitor the Hotel's reservation services, including Defendant's Website. He has specific additional plans in place to monitor both the Hotel and the Website, which he elects not to divulge in advance.

### DEFENDANT'S DISCRIMINATORY CONDUCT

57.     Defendant's policy and practice of providing inaccurate information on its websites regarding the accessible features in Wyndham-branded hotels is discriminatory and in violation of the ADA.

58.     Plaintiff would like to stay at the Hotel during his visits to the Laurel Highlands this summer and fall with the ability to use the Hotel's beds and other amenities safely and independently.

59.     However, the lack of accessible beds and other amenities has deterred Plaintiff from staying at the Hotel. The law does not require that Plaintiff actually subject himself to injury as a result of the inaccessible beds and other inaccessible amenities at the Hotel.

60.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accurate information regarding accessible beds and other accessible amenities on its website.

61.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that Defendant change its policies and practices to ensure the accuracy and adequacy of the information on its websites regarding the accessible features in Wyndham-branded hotels.

62.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## JURISDICTION AND VENUE

63.     The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

64.     Personal jurisdiction exists because Defendant owns, manages and/or operates a website seeking to facilitate substantial business at Wyndham-branded hotels within the Western District of Pennsylvania.

65.     Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

66.     Plaintiff Mullen, at all times relevant hereto, is and was a resident of Beaver County, Pennsylvania.

67.     Defendant Wyndham Hotels and Resorts, Inc. is a Delaware corporation headquartered at 22 Sylvan Way, Parsippany, NJ 07054.

11

68.     Plaintiff is a wheelchair user who is limited in the major life activity of walking.

## CLASS ALLEGATIONS

69.     Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class:  All individuals who use wheelchairs or scooters for mobility and who have accessed the pages of Defendant's websites that describe the accessible features at Wyndham-branded hotels.

70.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court and will facilitate judicial economy.  Plaintiff believes that he will be able to prove numerosity by discovering data maintained by or on behalf of Defendant regarding the specific number of visits to the relevant pages of its websites, among other similar data.

71.     Typicality:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

72.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

      A.  Whether Defendant owns, operates and/or controls the websites at issue;

      B.  Whether Defendant has adequate policies and procedures in place to ensure the accuracy of accessibility information on its websites; and

C.  Whether Defendant is required to provide accessibility information on its websites regarding bed heights.

73.    Adequacy of Representation:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

74.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

75.    Plaintiff incorporates by reference each and every allegation herein.

76.    Plaintiff brings this claim individually and on behalf of the class.

77.    Plaintiff is an individual with a disability under the ADA.  42 U.S.C. § 12102(1)(A).

78.    Defendant provides public accommodations under the ADA.  42 U.S.C. § 12181(7).

79.    Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a).

80.    Defendant owns and/or operates websites which provide information regarding Wyndham-branded hotels that are places of public accommodation under Title III of the ADA.

81.     Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure accurate and adequate accessibility information on its websites regarding Wyndham-branded hotels.

82.     Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

a)      denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at Wyndham-branded hotels;

b)      affording individuals with mobility disabilities unequal access to goods, services or facilities;

c)      utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

d)      failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

83.     Defendant's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause harm to the Plaintiff and the class.

84.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its websites into full compliance with the requirements set forth in the ADA, and its implementing regulations;

c.      An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d.      Payment of costs and reasonable attorneys' fees as provided for by law; and

e.      Such other additional or alternative relief as the Court finds just and proper.

Dated: April 4, 2024                                    Respectfully submitted,

                                                      /s/ R. Bruce Carlson
                                                      R. Bruce Carlson (PA ID No. 56657)
                                                      Ian M. Brown (PA ID No. 201680)
                                                      **CARLSON BROWN**
                                                      222 Broad St.
                                                      PO Box 242
                                                      Sewickley, PA 15143
                                                      bcarlson@carlsonbrownlaw.com
                                                      ibrown@carlsonbrownlaw.com
                                                      (724) 730-1753

                                                      *Counsel for Plaintiff*

15